RENACCI

v.

MARTELL et al., Appellants;  Kolar, Appellee.

[Cite as *Renacci v. Martell* (1993), 91 Ohio App.3d 217.]

Court of Appeals of Ohio,
Medina County.

No. 2155–M.

Decided Oct. 20, 1993.

*Thomas E. Palecek,* for James B. Renacci.

*Geoffrey E. Webster* and *Thomas P. Semple,* for appellants Great Trail Care Center, Inc.; Maplewood Care, Inc.; Minerva Convalescent Center, Inc.; Peaceful Acres Nursing Home, Inc.; and Edward A. Martell.

*David Kolar* and *Howard J. Krantz,* for appellee David Kolar.

DICKINSON, Judge.

Defendants and third-party plaintiffs, Edward A. Martell, Great Trail Care Center, Inc., Peaceful Acres Nursing Home, Inc., Maplewood Care, Inc., and Minerva Convalescent Center, Inc., appeal from the dismissal of their third-party complaint. They argue that the trial court incorrectly found that they failed to state a claim against third-party defendant, David Kolar, upon which relief could be granted and, therefore, erred in dismissing their third-party complaint. We affirm the trial court's dismissal because the averments of the third-party complaint did not constitute the type of claim cognizable as a third-party claim pursuant to Civ.R. 14(A), but we modify that dismissal to provide that it is without prejudice.

## I

### A

On August 27, 1991, James B. Renacci filed a complaint in the Medina County Court of Common Pleas against Edward Martell and four corporations of which Martell was the chief executive officer. Each of the four corporations operated a separate nursing home in Ohio.

By his complaint, Renacci alleged, in part, that he had entered into separate written consulting agreements with each of the four corporate defendants by which they had agreed to make certain payments to him. He further alleged that part of the consideration for those consulting agreements was his surrendering

his interest in a particular Ohio Certificate of Need for a nursing home to be built in Kent, Ohio. He claimed that, although he had performed all conditions imposed upon him by the consulting agreements, the corporate defendants had not paid him the full amount due pursuant to those agreements.

Renacci also alleged that Martell had entered into a written agreement by which he personally guaranteed the payments due him (Renacci) from the four corporate defendants pursuant to the consulting agreements. According to Renacci, Martell breached the written guarantee by refusing to make the guaranteed payments.

Martell and the four corporate defendants filed an answer and counterclaim against Renacci on October 16, 1991. On May 28, 1992, with leave of court, Martell and the corporate defendants filed a third-party complaint against David Kolar. The issue on this appeal is related to that third-party complaint.

### B

The guarantee agreement relied upon by plaintiff in his claim against Martell included a provision that rendered both the guarantee and the consulting agreements with the corporate defendants nullities if, under certain circumstances, the state of Ohio failed to license the nursing home to be located in Kent, Ohio:

"The parties to this agreement hereby expressly agree that if the nursing home to be located in Kent, Ohio, for which The Meadows Retirement, Inc. received a Certificate of Need from the Ohio Department of Health, should through no fault of Edward A. Martell and David Kolar, their agents, assigns and/or successors in interest, fail to be licensed, this Guarantee and the retainer agreements named herein are null and void as of the time of notice, real or constructive, to James B. Renacci."

Defendants alleged in their third-party complaint that Ohio failed to license the nursing home at issue and that the failure was caused by Kolar:

"The nursing home did fail to be licensed, and such failure was directly and proximately caused by the intentional, reckless, and/or negligent acts of Kolar in failing to, among other things, obligate the capital expenditure necessary to retain the certificate of need granted the project by the Ohio Department of Health."

Defendants demanded judgment against Kolar for "any and all damages" awarded plaintiff on his complaint.

On June 26, 1992, Kolar moved, pursuant to Civ.R. 12(B)(6), to dismiss defendants' third-party complaint against him for failure to state a claim upon which relief could be granted. On July 31, 1992, the trial court granted Kolar's motion.

## II

Civ.R. 14(A) authorizes the use of impleader to bring certain third parties into a lawsuit. It provides, in relevant part:

"At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him."

Defendants have argued that their third-party complaint against Kolar was appropriate pursuant to Civ.R. 14(A) and that, therefore, the trial court incorrectly dismissed it.

■ Civ.R. 14(A) and Fed.R.Civ.P. 14(a) are, in relevant part, identical. "The primary purpose of any procedure authorizing the impleader of third parties is to promote judicial efficiency by eliminating 'circuity of actions.' " 6 Wright, Miller & Kane, Federal Practice and Procedure (1990), Section 1442, at 289. Civ.R. 14(A), like Fed.R.Civ.P. 14(a), "is intended to provide a mechanism for disposing of multiple claims arising from a single set of facts in one action expeditiously and economically." Wright, Miller & Kane, supra, at 291. It cannot, however, be used to combine all claims tangentially related to one another:

"[I]mpleader is available only against persons who are or may be liable to defendant for part or all of plaintiff's claim; it cannot be used as a way of combining all controversies having a common relationship in one action." Wright, Miller & Kane, supra, at 295.

In order for a claim to be appropriately brought pursuant to Civ.R. 14(A), it must be "derivative of the outcome of the main claim." *United States v. Joe Grasso & Son, Inc.* (C.A.5, 1967), 380 F.2d 749, 751. The third-party defendant must be "secondarily liable" or "liable over." *Id.* "[I]t is clear that impleader under Rule 14 requires that the liability of the third party be dependent upon the outcome of the main claim." *Id.* at 751–752.

In *Southeast Mortgage Co. v. Mullins* (C.A.5, 1975), 514 F.2d 747, the United States Court of Appeals for the Fifth Circuit reviewed a number of cases in which courts had found an attempt to bring a third-party claim inappropriate. The court noted that the common element in those cases was that the right or duty the defendant was attempting to enforce through the third-party claim was not dependent for its existence on the outcome of the main claim in the case:

"The common thread running through these cases * * * is that the right or duty alleged to have been violated in the third-party complaint does not emanate from the main claim but exists wholly independent of it. In each, the nexus with the principal action is not that it establishes the right to relief, but merely the need for relief." *Id.* at 750.

█ In order to be the proper subject of a third-party action, the alleged right of the defendant to recover, or the duty allegedly breached by the third-party defendant, must arise from the plaintiff's successful prosecution of the main action against defendant.

█ In this case, defendants have alleged in their third-party complaint that Kolar intentionally, recklessly, or negligently breached a duty that caused the state of Ohio not to license a nursing home to be located in Kent. The existence of that tort claim is not dependent upon plaintiff's successful prosecution of the main claim against defendants. If Kolar owed a duty to defendants to use his efforts to cause the state of Ohio to issue a license and tortiously breached that duty, defendants may have a cause of action against him based on that breach. That cause of action, however, would be independent of plaintiff's claim against defendants. If that action proved successful, they could recover any damages they suffered as a result of that breach regardless of whether plaintiff's claim against defendants in this case is successful.[1] Inasmuch as defendants' claim against Kolar is not a proper claim that he is "secondarily liable" to them, the trial court correctly dismissed their third-party complaint against Kolar.

Although defendants' claim against Kolar was not an appropriate third-party claim, we do not reach the distinct question of whether it would be a claim upon which relief could be granted in a separate action. To avoid possible confusion concerning the scope of the *res judicata* effect of the trial court's dismissal, pursuant to App.R. 12(B), the judgment of the trial court is modified to provide that the dismissal of defendants' claim against Kolar is without prejudice. See *Southeast Mortgage Company v. Mullins, supra,* 514 F.2d at 750.

### III

Defendants' assignment of error is overruled. The dismissal of defendants' claim against Kolar is modified to provide that it is without prejudice. As modified, the judgment of the trial court is affirmed.

*Judgment affirmed*
*as modified.*

BAIRD, P.J., and REECE, J., concur.

---

1. Presumably, the damages recoverable by defendants would be measured by the value of the license they claim Kolar's alleged tortious behavior prevented them from receiving. It is unclear exactly how any amount payable to plaintiff in this case would affect that value. According to the part of the guarantee agreement quoted in the third-party complaint, defendants' liability to plaintiff would have been the same (1) if the state issued the license, or (2) if the state refused to issue the license and the reason it refused was due to Kolar's "fault."