OPINION
Sun Holiday Pools, Inc. ("Sun"), third-party defendant-appellant, appeals a November 20, 1998 judgment of the Franklin County Court of Common Pleas (1) denying Sun's motion to vacate its default judgment/motion to reconsider; (2) overruling Sun's objections to the magistrate's decision on damages; and (3) adopting the magistrate's decision on damages.
Kenneth L. Russell ("Russell"), defendant and third-party plaintiff-appellee, and his wife moved into a house in Grove City, Ohio. They decided to have a swimming pool constructed and contacted Sun, which sent a salesman to their home to discuss the matter. Russell showed Sun the deed to the property, which contained a restriction against above-ground pools. The salesman allegedly told Russell that they could easily avoid violating the deed restriction by building the pool so that it was partially underground. The salesman from Sun told Russell that he had considerable experience in these matters and could "get around" the restriction.
In order to finance the construction of the pool, Russell and his wife first executed a home improvement retail installment contract with Sun, but then obtained a second mortgage three months later. The pool was installed by Sun during the last week of June 1995. The installation of the pool cost $5,595 plus finance charges of $4,006.20, for a total of $9,601.20. However, the pool was entirely above-ground, and Sun had failed to obtain a permit before the installation. Subsequently, Sun obtained a permit for an "above-ground" pool.
On March 6, 1996, plaintiff, White Oak Communities, Inc. ("White Oak"), filed a complaint against Russell, alleging that Russell had violated deed restrictions by constructing the above-ground pool and praying for a permanent injunction. On April 25, 1996, Russell filed an answer to the complaint. On December 10, 1996, White Oak filed a motion for summary judgment against Russell.
On February 21, 1997, an agreed judgment entry was filed granting Russell leave to file a third-party complaint. On that same day, Russell filed a third-party complaint against third-party defendant-appellant Sun, claiming that Sun breached its contract with Russell, Sun was negligent in the performance of its duties, and Sun was guilty of fraud. Russell prayed for specific performance against Sun or, in the alternative, for judgment against Sun for compensatory and punitive damages, attorney fees, costs, and interest. On February 26, 1997, service of the third-party complaint was perfected by certified mail upon Sun. Sun did not file a responsive pleading or otherwise defend.
On March 18, 1997, the court granted White Oak's motion for summary judgment against Russell. The judgment was filed on April 10, 1997, which ordered Russell to completely remove the above-ground swimming pool from his premises. On March 31, 1997, Russell filed a motion for default judgment against Sun pursuant to Civ.R. 55(A), which the court granted on May 14, 1997.
On August 31, 1998, a damages hearing was held before a magistrate. Russell appeared with counsel, but Sun again failed to appear or otherwise defend. Plaintiff testified before the magistrate that Sun was "quite indifferent" to the problems caused by the improper installation of the pool. According to Russell, Sun did nothing to alleviate the situation. As a result, Russell had to arrange to have the pool dismantled for $50.
On September 2, 1998, the magistrate filed his decision, finding that Russell was entitled to recover the following amounts from Sun for damages sustained as a result of Sun's actions: (1) $5,595 — cost of pool; (2) $4,006.20 — finance charges; (3) $50 — cost of pool removal; (4) $1,500 — attorney fees; and (5) $25,000 — punitive damages. On September 16, 1998, Sun filed objections to the magistrate's decision, citing the following objections: (1) the default judgment was void, as a matter of law; (2) Russell misused the third-party complaint because such may not be used to pursue an independent cause of action against a third-party defendant; (3) Sun received no notice of the damages hearing; (4) the amount of damages awarded by the magistrate exceeded the amount prayed for in the complaint; (5) Russell was not entitled to punitive damages because he did not prove malice or gross or egregious fraud; and (6) because Russell was not entitled to punitive damages, he was not entitled to attorney fees. Sun also filed on September 16, 1998, a "Motion to Vacate Default Judgment/Motion to Reconsider Decision Granting Default Judgment."
On November 5, 1998, the trial court filed its decision: (1) denying Sun's motion to vacate default judgment; (2) overruling Sun's objections to the magistrate's decision on damages hearing; and (3) adopting the magistrate's decision on damages. The court's judgment entry journalizing its November 5, 1998 decision was filed on November 20, 1998. Sun appeals this judgment, asserting the following assignments of error:
FIRST ASSIGNMENT OF ERROR
 The trial court committed prejudicial error by granting a judgment based on a default which was different in kind and exceeded the amount prayed for in the Third-Party Complaint's demand for judgment.
 SECOND ASSIGNMENT OF ERROR
 The trial court's judgment adopting the Magistrate's Decision on damages is against the manifest weight of the evidence, contrary to law, and an abuse of discretion.
 ASSIGNMENT OF ERROR NO. 3 [sic.]
 The trial court committed prejudicial error by not sustaining the objection to the Magistrate's Decision which was based on the inappropriateness of the Third-Party Complaint.
 ASSIGNMENT OF ERROR NO. 4 [sic.]
 The trial court committed prejudicial error by not vacating the default judgment or by not reconsidering its decision granting default judgment.
We will address Sun's second assignment of error first because its outcome will affect our determination of the first assignment of error. Sun argues in its second assignment of error that the trial court's judgment adopting the magistrate's decision on damages was against the manifest weight of the evidence, contrary to law, and an abuse of discretion. Specifically, Sun argues that the magistrate erred in its award of punitive damages, attorney fees, and finance charges.
In order to award punitive damages due to fraud, Russell must have demonstrated, in addition to proving the elements of the tort itself, "that the fraud is aggravated by the existence of malice or ill will, or must demonstrate that the wrongdoing is particularly gross or egregious." Charles R. Combs Trucking, Inc.v. International Harvester Co. (1984), 12 Ohio St.3d 241, paragraph three of the syllabus. Malice requires that "the defendant possessed either (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." Cabe v. Lunich (1994), 70 Ohio St.3d 598, 601. A bare case of fraud or constructive fraud does not warrant the assessment of exemplary or punitive damages. Logsdon v. GrahamFord Co. (1978), 54 Ohio St.2d 336, 339. The decision to award punitive damages is within the trial court's discretion. Cabe, at 602-603. Absent an abuse of discretion, the trial court's ruling on punitive damages will be upheld. Id.
From our review of the record, assuming arguendo that Russell proved all of the elements of fraud, we cannot agree that Sun acted with malice toward Russell. Russell did not allege or present evidence that Sun's actions were aggravated by malice or ill will or that the wrongdoing was particularly gross or egregious. While it may be true that Russell presented sufficient evidence to support a finding that Sun misrepresented that the pool would be constructed in a manner that would "get around" the restriction in the deed, this does not amount to malice or a gross or egregious wrongdoing. There was also no evidence that Sun had a state of mind characterized by hatred, ill will or a spirit of revenge. The only evidence cited by the magistrate as to Sun's disposition regarding the whole matter was that Sun was "indifferent" to the problems with the pool. Further, while it may be true that Sun's misrepresentations had the possibility of causing economic harm to Russell, there was no evidence that Sun had the state of mind to consciously disregard Russell's rights so as to cause such harm. Although Sun's actions may have been willful or intentional, there was insufficient evidence, including the allegations set forth in the complaint, to show an aggravation of simple fraud. Thus, even if the trial court could have found that Sun committed fraud, there is no showing of malice, ill will, or particularly gross or egregious fraud, and the trial court abused its discretion in awarding punitive damages.
As to the attorney fees awarded, it is well settled that attorney fees can only be awarded in fraud cases where punitive or exemplary damages would be appropriate. See Saberton v. Greenwald
(1946), 146 Ohio St. 414, paragraph two of the syllabus. "As such, an award of attorney fees will not be sustained either by the denial or reversal of an award of punitive damages." Ferrittov. Olde Co., Inc. (1989), 62 Ohio App.3d 582, 588. When no punitive damages are awarded, it is error for the trial court to award attorney fees. Czarnecki v. Basta (1996), 112 Ohio App.3d 418,425. Therefore, because the punitive damages were eliminated in the case at bar, the award of attorney fees must also be denied.
Sun also argues that the trial court erred in awarding Russell $4,006.20 in finance charges. Sun's sole argument is that R.C. 1343.03 precludes, as a matter of law, the trial court's award of finance charges to appellee, citing Dinapoli v.Lewandowski (Sept. 30, 1998), Summit App. No. 18897, unreported. R.C. 1343.03(A) provides, in pertinent part:
 Except as provided in division (C)(2) of this section, in cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum * * *.
Sun maintains that R.C. 1343.03(A) prohibits the trial court's award of the finance charge that represents the accumulated interest on Russell's loan. However, we find nothing in R.C. 1343.03(A) that would prohibit such an award of interest charges on a loan as damages. The correct measure of damages is the amount necessary to place the nonbreaching party in the same position he/she would have been had the breaching party fully performed, the idea being to make the nonbreaching party "whole." F. Enterprises, Inc. v. Kentucky Fried Chicken Corp.
(1976), 47 Ohio St.2d 154. Consequential damages may also be awarded and are those damages that may reasonably "be supposed to have been contemplated by the parties as the probable result of such breach." Devereux v. Buckley Co. (1877), 34 Ohio St. 16,20, citing Hadley v. Baxendale (1854), 9 Exch. 341. Interest on a loan falls within the definition of consequential damages. Kirkv. Van Buren (Dec. 26, 1996), Licking App. No. 96 CA 44, unreported. R.C. 1343.04 simply does not indicate any prohibition against awarding accumulated interest on a loan as an element of a party's compensatory damages. See, also, Blatnicky v.Sheller-Globe Corp. (Mar. 28, 1996), Cuyahoga App. No. 69026, unreported. Therefore, we find that the trial court did not err in awarding appellant finance charges.
We also note that, although the record is not clear, Russell apparently used part of the proceeds of the second mortgage ($5,905.73) to prepay in total the principal and accumulated interest on the installment contract between Sun and Russell. However, the trial court awarded $4,006.20 in finance charges, which represented the total amount of interest that would have accrued during the full term of the installment contract, which was seven years. The installment contract had a prepayment provision that stated if Russell prepaid the amount in full before the final due date, he would be credited part of the finance charge. Thus, although Russell was awarded a lump sum of $4,006.20, he did not incur this amount as a finance charge because he apparently paid the total due within a few months of executing the installment contract, thereby entitling him to a credit for all interest that had not accrued. Certainly Russell is also obligated to pay some interest rate on the portion of the second mortgage used for the pool, but the record is unclear as to what that percentage rate is. Thus, it would appear as though a lump-sum award to Russell of the $4,006.20 in interest from the installment contract would result in some windfall for Russell. However, this argument was never specifically raised by Sun in its brief. Sun does briefly mention in its reply brief that awarding finance charges as a general rule would require courts to determine whether there was a prepayment of interest; however, Sun never specifically argued such with regard to the facts of this case. Further, our review of the record fails to show that Sun raised this issue before the trial court and, therefore, such argument is waived for appellate purposes. See App.R. 12; C.Miller Chevrolet v. Willoughby Hills (1974), 38 Ohio St.2d 298. Therefore, appellant's second assignment of error is sustained in part and overruled in part.
Sun argues in its first assignment of error that the trial court committed prejudicial error by granting a judgment based on a default that was different in kind and exceeded the amount prayed for in the demand for judgment in the third-party complaint. Appellant first argues that the trial court erred in awarding Russell over $25,000 in total damages because Russell violated Civ.R. 8(A) in failing to specify in his pleadings that he was seeking more than $25,000. However, our determination of Sun's second assignment of error renders this argument moot because Russell's award is now below the $25,000 threshold contained in Civ.R. 8(A).
Appellant next argues that Russell was not entitled to damages in excess of zero because his demand for judgment did not contain a specific dollar amount pursuant to Civ.R. 54(C). Russell demanded in his third-party complaint "an amount sufficient to compensate and make Russell whole for all damages, costs, expenses, interest and any other expenditure incurred in the defense of the complaint and the prosecution of this Third Party Complaint" and for "compensatory and punitive damages, attorney's fees, costs and interest at 10% from June 22, 1995." Appellant cites no case law supporting his interpretation of Civ.R. 54(C). Civ.R. 54(C) provides:
 Demand for judgment. A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded the relief in the pleadings.
Civ.R. 54(C) was significantly amended on July 1, 1994, but it did not affect the provision applying to default judgments found in the first sentence of the rule.
Our review of the relevant case law has found few cases directly on point with the facts as presented in this case, in which there was a judgment by default. In Piscitelli v.Chemstreams, Inc. (Jan. 27, 1993), Summit App. No. 15740, unreported, the trial court awarded a default judgment in favor of appellants and against appellee for breach of contract and fraud. At the hearing on damages, appellee moved for zero damages because appellants' complaint did not specify the dollar amount of damages sought, as required by Civ.R. 54(C). The trial court rejected appellee's zero-damages argument and awarded appellants approximately $13,000 in damages. On appeal, the court found that the trial court did not err in finding that appellants' damages were limited to $25,000 pursuant to Civ.R. 54 because they did not indicate a specific dollar amount. Importantly, however, the court did not reduce the judgment to zero and affirmed the trial court's award of $13,000.
In Morris v. Robertson Heating Supply Co. (Nov. 21, 1980), Licking App. No. CA 2711, unreported, the plaintiff's complaint demanded judgment against the defendant "for the sum of an amount equal to compensation, wages, fringe benefits [and] pension rights lost by Plaintiff." The trial court granted a default judgment and set the case for a damages hearing. Defendant filed a motion for relief from judgment, claiming that plaintiff was only entitled to zero damages because there was no specific dollar amount demanded in the complaint. The trial court granted the relief from judgment. The appellate court found that because the complaint did not contain a prayer setting forth the dollar amount of the money judgment claimed for compensatory damages as required by Civ.R. 54(C), only a judgment for zero dollars could be awarded by default.
However, the facts in Morris are distinguishable from those in this case in one important aspect. The amounts demanded in Morris were not certain or definite. However, in the present case, Russell's demand for damages was for a definite amount, although not so stated in a dollar figure. The compensatory damages claimed by Russell were for the cost of the pool, the finance charges, and the cost of the removal of the pool. The cost of the pool and the finance charges, which constitute the entire amount of the compensatory damages that we have found Russell is entitled to except for the $50 for removal of the pool, were definite, fixed sums that were specifically set forth in the home improvement installment contract, to which Sun was a party. Therefore, we find the reasoning in Morris to be inapplicable to the present case and find Piscitelli more persuasive in that, under the circumstances of this case, a zero damages award is not required.
We also note that there is nothing in Civ.R. 54(C) that mandates that a party plead a specific dollar amount in its demand for judgment; rather, Civ.R. 54(C) only requires that the complaint state an "amount." It is apparent that the major purpose behind Civ.R. 54(C) is to put the defendant on notice prior to trial as to his potential liability so that he may make a rational decision whether to defend the action. See Bishop v.Grdina (1985), 20 Ohio St.3d 26, 28. In the present case, at a minimum, Sun could ascertain by the third-party complaint that Russell was requesting the specific amount for the cost of the pool, including finance charges, and the cost of removing the pool. Appellee knew the specific amount of the cost of the pool, as well as the total finance charges incurred, because it was a party to the home improvement installment contract, which indicated these costs. In addition, we cannot say that the damages were in excess of "an amount sufficient to compensate and make Russell whole for all damages, costs, expenses, [and] interest," which were demanded by Russell in his complaint. Therefore, Sun's first assignment of error is overruled.
Sun argues in its third assignment of error that the trial court erred by not sustaining the objection to the magistrate's decision, which was based on the inappropriateness of the third-party complaint. Specifically, Sun argues that Russell's third-party complaint alleged only independent causes of action against Sun, in contravention of Civ.R. 14(A), which provides, in pertinent part:
 When defendant may bring in third party. At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. * * *
Civ.R. 14(A) does not allow a third-party complaint to be founded on a defendant's independent cause against a third-party defendant, even though arising out of the same occurrence underlying plaintiff's claim, since a third-party complaint must be founded on a third party's actual or potential liability to the defendant for all or part of the plaintiff's claim against the defendant. State Farm Mut. Ins. Co. v. Charlton
(1974), 41 Ohio App.2d 107. Therefore, impleader under Civ.R. 14(A) cannot be used to combine all claims tangentially related to one another. Renacci v. Martell (1993), 91 Ohio App.3d 217.
Russell's third-party complaint alleged that the third-party defendant Sun was liable for the costs associated with removing the pool and complying with applicable laws and regulations due to Sun's breach of contract, negligence, breach of promise, and fraud. In order to be the proper subject of a third-party action, the alleged right of the defendant to recover, or the duty allegedly breached by the third-party defendant, must arise from the plaintiff's successful prosecution of the main action against defendant. Renacci, at 220. A third-party claim must be derivative of the outcome of the main claim, and the third-party defendant must be "secondarily liable" or "liable over." Id.
In the present case, Russell's claims were necessarily dependant upon White Oak's successful prosecution of its injunctive action to require Russell to remove the pool. Russell would not have been able to recover damages from Sun if White Oak would not have been successful in prosecuting its injunctive action and in proving that the pool was not in compliance with the deed restriction. Further, Russell moved the court for a stay in the execution of the injunction requiring him to dismantle the pool, believing that Sun should either dismantle the pool or pay the costs associated with such. Thus, Russell was clearly claiming that Sun was directly responsible for the judgment against him that was rendered in the original action. Given the existence of a proper third-party claim, Civ.R. 18 (A) allows joinder of any claims a party may have against an opposing party.Marbella Assocs. v. Swaninger (June 21, 1996), Montgomery App. No. 15458, unreported. Therefore, Russell's claims in his third-party complaint against Sun complied with the requirements of Civ.R. 14(A) and 18(A). Sun's third assignment of error is overruled.
Sun argues in its fourth assignment of error that the trial court erred by not vacating the default judgment or by not reconsidering its decision granting default judgment. Sun asserts two reasons as to why the third-party complaint was not a "legitimate pleading," and, thus, why it had no duty to file an answer and Russell could not be awarded a default judgment pursuant to Civ.R. 55(A). Sun first claims that in filing his third-party complaint Russell failed to comply with Civ.R. 14(A), which provides, in pertinent part:
 * * * The third-party plaintiff need not obtain leave to make the service if he files the third-party complaint not later than fourteen days after he serves his original answer. Otherwise he must obtain leave on motion upon notice to all parties to the action. * * *
Pursuant to an agreed judgment entry, Russell filed his third-party complaint nearly ten months after he served his answer. The agreed judgment entry stated:
 By agreement of the parties, Defendant is hereby granted leave to serve his response to the Plaintiff's alternative motion for sanctions or for summary judgment and an amended answer and third party complaint on or before February 18, 1997.
We find that the trial court did not err in finding that the agreed judgment entry was sufficient to satisfy the pleading requirements of Civ.R. 14(A). Both parties to the action at the time of the filing of the agreed judgment entry, Russell and White Oak, had notice of Russell's request for leave to file a third-party complaint. Both parties to the action signed the agreed entry, as did the trial court judge. Such was sufficient pursuant to Civ.R. 14(A).
Sun next argues that the third-party complaint was not a "legitimate pleading" because the agreed entry indicates that Russell had leave to file the third-party complaint up to February 18, 1997, but he did not file it until February 21, 1997, and did not serve it upon Sun until February 26, 1997. However, the certificate of service attached to the third-party complaint indicates that Russell served his third-party complaint upon White Oak on February 18, 1997, in compliance with the agreed judgment entry. The agreed judgment entry did not state that Russell must serve the third-party complaint upon Sun by February 18, 1997. Further, although the agreed entry does not mention a filing due date, we note that the third-party complaint was thereafter timely filed according to Civ.R. 5(D), which requires all papers required to be served on a party be filed with the court within three days after service. It is also of no consequence that the complaint was not served upon Sun until February 26, 1997. Russell timely filed the complaint pursuant to the agreed entry and Civ.R. 5, and he cannot control how long the clerk of courts takes to serve the complaint upon Sun or how long it takes Sun to accept the certified mail. Therefore, Sun's fourth assignment of error is overruled.
Accordingly, Sun's second assignment of error is sustained in part and overruled in part and its first, third, and fourth assignments of error are overruled. The judgment of the Franklin County Court of Common Pleas is affirmed in part, reversed in part and remanded to the trial court for a new order consistent with this opinion.
Judgment affirmed in part; reversed in part; cause remanded.
LAZARUS, P.J., and BOWMAN, J., concur.